UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREAT LAKES INSURANCE SE,

    Plaintiff,

v.                                       Case No.:  2:24-cv-814-JLB-KCD

TORCHIATI, LLC,

    Defendant.
                                       /

## ORDER

Before the Court is Defendant Torchiati, LLC's Amended Motion to Compel Appraisal (Doc. 23.)[1] Plaintiff Great Lakes Insurance SE has responded in opposition. (Doc. 25.) For the reasons below, the motion is **GRANTED**.

## I. Background

Torchiati owns beachfront property on Estero Island. (Doc. 1 ¶ 29.) Before Hurricane Ian, two buildings stood on the property. (*Id.* ¶ 30.) Both were occupied by restaurants—Junkanoo and Fresh Catch Bistro. Great Lakes insured both buildings under a single policy. (*See* Doc. 1-6.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Fresh Catch's "roof, interior, exterior, and foundation" were severely damaged during Hurricane Ian. (Doc. 1 ¶ 37.) Junkanoo was not so lucky. It was "completely destroyed," with only the foundation remaining. (*Id.*)

After the storm, Torchiati filed a claim with Great Lakes. (*Id.* ¶ 36.) Great Lakes accepted coverage for Fresh Catch but denied the same for Junkanoo. (*Id.* ¶¶ 43-45.) This disparate result stems from Great Lakes' interpretation of the policy. Under its terms, windstorm damage is covered, but storm surge is not. (*See* Doc. 1-6 at 30-32.) In processing Torchiati's claim, Great Lakes hired an engineer to inspect the property. He concluded:

> The wave action of the storm surge acting on the Junkanoo Café accounted for the majority of the damage and ultimately resulted in the total destruction of the building given the reported surge by WG at the subject location. Wind damage to this building could not be assessed directly given the destruction of the building; however, based on the observed wind damage to the adjacent building still remaining at the property, it is likely that the roof covering, siding, and other architectural features would have been significantly damaged by wind. That said, wind alone was not strong enough to structurally damage or destroy the building.

(Doc. 1 ¶ 42.) Torchiati's expert similarly found "it . . . more likely than not" that "49.9% of the damage" to Junkanoo came from wind and "50.1% of the damage" came from storm surge. (Doc. 1-9 at 40.)

The experts' apparent agreement on the flood damage is significant. Under the policy, a loss resulting "directly or indirectly" from an excluded cause (such as storm surge) is not covered "regardless of any other cause or

event" (such as a windstorm) "that contributes concurrently or in any sequence to the loss." (*Id.* at 31.) Because storm surge undisputedly contributed to Junkanoo's destruction, Great Lakes denied coverage for that part of the claim. (*See* Doc. 1-7 at 4-5, *see also* Doc. 1-10 at 2-3.)

When the parties could not agree on a settlement figure, Great Lakes filed this declaratory judgment action. (Doc. 1.) Torchiati counterclaimed for breach of contract (Doc. 18) and now seeks appraisal (Doc. 23).

Under the policy, either party may demand appraisal if there is a disagreement concerning "the amount of loss." (Doc. 1-6 at 40.) Great Lakes agrees appraisal is appropriate (in some form) because it "provided coverage for . . . the Fresh Catch loss." (Doc. 25 at 8.) But here's the rub: it wants to limit the scope of appraisal to the amount of loss sustained by Fresh Catch. Great Lakes believes Junkanoo is not ripe for appraisal since it wholly denied coverage for that building—meaning the parties dispute coverage rather than the amount of loss.

Torchiati sees things differently. It argues that the two buildings form a single claim since they fall under the same policy, "share a single Wind, Hail & Hurricane deductible," and were adjusted under the same claim number. (*See* Doc. 23 ¶¶ 4, 5, 9.) Thus, appraisal should move forward and encompass both buildings.

3

## II. Legal Standard

In Florida, "[a]ppraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits." *Fla. Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc.*, 34 So. 3d 791, 794 (Fla. Dist. Ct. App. 2010). That is not to say appraisal is always appropriate. "When an insurer admits a covered loss has occurred . . . appraisal is appropriate to resolve any dispute as to the amount of the loss, including disputes as to how much of the claimed damage was caused by the covered loss." *Heritage Prop. & Cas. Ins. Co. v. Wellington Place HOA, Inc.*, 373 So. 3d 1, 3 (Fla. Dist. Ct. App. 2023). But "[w]hen an insurer wholly denies coverage, the trial court must resolve the coverage dispute before ordering appraisal." *Id.* That is because "[i]ssues relating to coverage challenges are questions exclusively for the judiciary." *Florida Ins. Guar. Ass'n, Inc.*, 34 So. 3d at 794.

## III. Discussion

Great Lakes agrees appraisal should move forward as to Fresh Catch. (Doc. 25 at 8.) At issue is whether the appraisal panel should also consider Junkanoo. A joint appraisal is inappropriate, according to Great Lakes, because the buildings "are separately identified and listed [in the policy], with each having its own limits of insurance." (*Id.* at 9-10.) Thus, "each loss for each building is a separate claim and where appraisal is appropriate, separate appraisals are ordered for each building." (*Id.* at 10.)

4

To support its argument, Great Lakes turns to *Pernas v. Scottsdale Ins. Co.*, No. 1:15-CV-21506-KMM, 2016 WL 471949, at *1 (S.D. Fla. Feb. 8, 2016). In *Pernas*, the court confronted an insurance claim for two properties where coverage was afforded to one but not the other. *Id.* at *1-2. The plaintiff moved for appraisal, arguing that since both properties were insured under the same policy and had the same claim number, coverage was not wholly denied on the loss. *Id.* at *3. The court rejected this argument, noting that since the properties were listed separately and had their own coverages, they were "effectively covered by separate insurance contracts." *Id.* "[M]eaning that the amount recoverable for a loss affecting one property must be determined independently of any loss affecting the other," and "[a]n independent coverage determination for each property is thus required." *Id.*[2]

There is considerable (if not complete) overlap between *Pernas* and the facts here. But the Court cannot follow suit for a simple reason—a Florida appellate court has done the opposite. *See Merrick Pres. Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d 45 (Fla. Dist. Ct. App. 2021).

---

[2] Although not entirely clear, Great Lakes seems to suggest this Court endorsed *Pernas* and its reasoning in *Clockwork PH3, LLC v. Clear Blue Specialty Ins. Co.*, No. 2:23-CV-407-SPC-KCD, 2023 WL 6247595, at *2 (M.D. Fla. Sept. 26, 2023) (Dudek, J). Not so. The insurer in *Clockwork* sought to limit appraisal to the lone building where it acknowledged coverage. *Id.* at 5-6. That argument was rejected because the policy did not separate the buildings, unlike the facts in *Pernas*. This Court merely distinguished *Pernas* without suggesting that its reasoning would stand on similar facts.

5

In *Merrick*, the policyholder filed a claim for storm-related damage for more than twenty buildings covered under its commercial insurance policy. The insurer recognized coverage for all but four. *Id.* at 47. The policyholder moved to compel appraisal for the entire claim, including the buildings with no coverage, but the trial court rejected its request. *Id.* at 48-49. The appellate court reversed. Although it noted that each building was covered by "what is effectively a separate policy," the court ultimately concluded that "appraisal [wa]s appropriate to determine the amount of loss to *each* building" because the insurer had not wholly denied the claim, having recognized coverage for seventeen of the buildings. *Id.* at 50 (emphasis added).

This Court recently followed *Merrick* in considering whether to order appraisal when the insurer disputed coverage for some—but not all—of the buildings covered under a commercial insurance policy. *See Positano Place at Naples III Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-183-SPC-MRM, 2022 WL 714810 (M.D. Fla. Mar. 10, 2022) (Chappell, J.). The policy in *Positano* covered five buildings. *Id.* at *1. After the policyholder filed a claim for storm-related damage, the insurer recognized coverage for three. *Id.* at 8. Like Great Lakes, the insurer in *Positano* argued that appraisal was only appropriate for the buildings where it acknowledged coverage. *Id.* This Court disagreed. Citing *Merrick*, Judge Chappell sent the entire claim to appraisal since the insurer "did not wholly deny coverage for each building." *Id.*

6

According to Great Lakes, *Positano* and *Merrick* are distinguishable. Starting with the former, Great Lakes claims that *Positano*'s outcome stems from the insurer's Freudian slip, in which it appeared to recognize damage to each building where it had denied coverage. (*See* Doc. 25 at 12-13.) And those are not the facts here since Great Lakes wholly disclaimed coverage for Junkanoo. But this argument ignores what Judge Chappell actually said: "[a]s the R&R explained, [the insurer] did not wholly deny coverage *for each building*, bringing this case in line with the facts of *Merrick*[.]" *Positano Place*, 2022 WL 714810, at *2. Judge Chappell found *Merrick* applicable because the insurer had accepted coverage for two of the five buildings, just as here.

As for *Merrick*, Great Lakes notes the insurer made "no argument . . . that appraisal would be warranted for some properties but not others, leaving little choice for how [the] court ruled." (Doc. 25 at 14.) In other words, there was no effort to bifurcate the appraisal process among the covered and non-covered buildings. The Court is similarly unpersuaded. No matter what was argued in *Merrick*, the appellate court confronted the issue raised here. *Merrick* acknowledged that several buildings had been denied coverage, and each was "covered by what is effectively a separate policy," yet appraisal was ordered for the entire property. *Merrick*, 315 So. 3d at 50. Great Lakes' argument that Florida law requires "separate appraisals . . . for each building" runs headlong into *Merrick* no matter the advocacy offered. (Doc. 25 at 10.)

7

When the "Florida Supreme Court has not spoken definitively on" an issue of Florida law, as here, "we follow relevant decisions of Florida's intermediate appellate courts." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004). Although Great Lakes offers several arguments that might prevail in a vacuum, this Court cannot ignore *Merrick* and its result under similar facts. Thus, appraisal will be ordered for both buildings.

One last thing. Even if the Court was convinced that bifurcating appraisal was appropriate, "[t]he Court has discretion over the relative timing of appraisal and coverage determinations[.]" *Positano Place*, 2022 WL 714810, at *2. The Court believes "requiring appraisal as to [both] buildings covered by the Policy will likely assist the Court when it later determines coverage." *Id*.

Accordingly, it is now **ORDERED**:[3]

1. Respondent Torchiati, LLC's Amended Motion to Compel Appraisal (Doc. 23) is **GRANTED.**

2. As contemplated in the Court's scheduling order, the case is **STAYED** pending the completion of the appraisal since it may resolve a majority, if not all, of the parties' dispute. The Clerk is directed to **ADD A**

---

[3] Like other stipulations about dispute resolution, this Court enforces contractual appraisal provisions by non-dispositive order. *See Gulfside, Inc. v. Lexington Ins. Co.*, No. 2:22-CV-47-SPC-NPM, 2023 WL 2743148, at *2 (M.D. Fla. Mar. 31, 2023).

**STAY FLAG** and **ADMINISTRATIVELY CLOSE** the case pending the outcome of appraisal.

3. The parties must file a joint report on the status of appraisal on or before **March 31, 2025**, and every **ninety days** thereafter until appraisal has ended.

4. Within **seven days** of appraisal ending, the parties are **DIRECTED** to jointly notify the Court of (a) what issues, if any, remain for the Court to resolve; (b) whether the stay needs to be lifted; and (c) how this action should proceed, if at all.

**ENTERED** in Fort Myers, Florida on January 9, 2025.

Kyle C. Dudek
United States Magistrate Judge

Copies: All Parties of Record